UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DAVID H.,                                      :
              Plaintiff,                        :
                                               :
          v.                                   :        C.A. No. 21-333WES
                                               :
KILOLO KIJAKAZI,                               :
Acting Commissioner of Social Security,        :
              Defendant.                        :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff David H. is a "younger" applicant for Supplemental Security Income ("SSI")

pursuant to § 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c)(3).

He suffers from bipolar disorder.  This is his third attempt to qualify for disability benefits.  Prior

to the period currently in issue,[1] Plaintiff was working but stopped in March 2017 "due to Injury

that took place in October 2016."  Tr. 215.  Thereafter, he began to decrease his intake of

prescribed medication.  This resulted in an "acute manic episode" and two extended inpatient

hospitalizations in June and July 2017.  Tr. 450-51.  Following discharge on August 1, 2017,

Plaintiff resumed treatment with medication and therapy at The Providence Center and was fully

compliant with his medication regime.  The resulting medical record – both leading up to and

during the period in issue – reflects a consistent pattern of mental status examinations[2] by an

---

[1] Because Plaintiff has applied for SSI, the period currently in issue began on the date of the current application
(August 18, 2019), Tr. 10-11, and runs through the date of the ALJ's decision on December 1, 2020.  20 C.F.R. §
416.202(g).

[2] A mental status examination or MSE is an objective clinical assessment of an individual's mental ability, based on
a health professional's personal observation, where "experienced clinicians attend to detail and subtlety in behavior,
such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken
message of conversation."  Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *5 n.7 (D.R.I. Mar. 7,
2022), adopted by text order (D.R.I. Mar. 31, 2022); Lilibeth G. v. Kijakazi, C.A. No. 20-474WES, 2021 WL
5049377, at *1 n.4 (D.R.I. Nov. 1, 2021), adopted, 2021 WL 5631745 (D.R.I. Dec. 1, 2021).

array of treating providers that are overwhelmingly normal, with consistently normal attention and concentration, good eye contact, cooperative and pleasant attitude, average intellectual functioning, adequate judgment and insight, intact memory and normal energy.  Infrequently, some providers noted constricted or blunt affect and observed a hand tremor, occasional anxious or sad mood and, rarely, decreased energy.  Providers always found Plaintiff's mental health to be "stable" and almost always noted no reported side effects from medication.

In connection with the current application, the Administrative Law Judge ("ALJ") faced conflicting medical evidence from treating providers and the non-examining psychologists.[3]  To resolve these conflicts, the ALJ procured the expertise of a testifying medical expert (psychologist Dr. Neli Cohen).  After listening to Plaintiff's testimony and citing to specific exhibits of record, Dr. Cohen testified that she had reviewed the entire medical file and opined that Plaintiff's bipolar disorder had caused no "significant symptomologies" with no limitation in any functional area since August 2017, when he resumed treatment at The Providence Center, following the 2017 manic episode caused by the self-initiated reduction in medication.  Tr. 45-46.  The ALJ found Dr. Cohen's opinion to be persuasive and relied on it (together with his own assessment of the evidence) to conclude that Plaintiff's bipolar disorder does not qualify as a severe impairment, ending the disability analysis at Step Two.

---

[3] At most of Plaintiff's treating appointments (with physician Dr. Mary Gene Santa Teresa, therapist Brian DiCicco and nurses Judith DuBois, Panha Ngom, Gail Moran and Amilie Tat), he was observed to be largely free of symptoms; his treatment plan included "needs employment" and providers discussed vocational issues and his pursuit of music and writing.  E.g., Tr. 452, 497, 548, 593, 741, 775.  By contrast, one treating provider, Nurse Marol Kerge, consistently noted that she had recommended that Plaintiff seek SSI, despite her largely normal MSE observations (except for sometimes sad/anxious mood, constricted affect, hand tremor and (twice) low energy).  Tr. 513, 545-46, 819.  Also somewhat inconsistent with most of the treating record, the state agency psychologists (Dr. Albert Hammel and Dr. Ryan Haggarty) reviewed Plaintiff's records and found that bipolar disorder was a severe mental impairment resulting in mild/moderate limitations.  However, both of them opined that, despite these limitations, Plaintiff retained the residual functional capacity to work.  Tr. 85-88, 95-98.

Plaintiff contends that Dr. Cohen's opinions were formed in reliance on an incorrect legal standard and without the support of substantial evidence.  He has moved for reversal of the decision of the Commissioner of Social Security (the "Commissioner") denying his application.  Defendant Kilolo Kijakazi has cross-moved for an order affirming.  The parties' dueling motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128-131 (1st Cir. 1981).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is

limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

## II.    Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 416.905.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 416.905-911.

### A.    The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 416.920.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 416.920(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. § 416.920(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 416.920(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. § 416.920(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled

is warranted.  20 C.F.R. § 416.920(g).  Significantly, the claimant bears the burden of proof at

Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski v.

Saul, 959 F.3d 431, 434 (1st Cir. 2020).

B.    **Step Two Determination**

The disability analysis ends at Step Two if a claimant has a medically determinable

impairment that has not been "severe" for a consecutive twelve-month period.  20 C.F.R. §

416.920(a)(4)(ii).  "An impairment . . . is not severe if it does not significantly limit [the

claimant's] . . . mental ability to do basic work activities."  20 C.F.R. § 416.922.  Basic work

activities include "[u]nderstanding, carrying out and remembering simple instruction; [u]se of

judgement; responding appropriately to supervision, co-workers and usual work situations; and

[d]ealing with changes in a routine work setting."  20 C.R.R. § 922 (b)(3), (4), (5), (6).  Non-

severity is found where the medical evidence establishes no more than a slight abnormality that

would have only a minimal effect on an individual's ability to work.  SSR 85-28 at *2, 1985 WL

56856 (Jan. 1, 1985).  Step Two is a screening device used to eliminate applicants "whose

impairments are so minimal that, as a matter of common sense, they are clearly not disabled from

gainful employment."  McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st

Cir. 1986); Burge v. Colvin, C.A. No. 15-279S, 2016 WL 8138980, at *7 (D.R.I. Dec. 7, 2016),

adopted sub nom., Burge v. Berryhill, 2017 WL 435753 (D.R.I. Feb. 1, 2017).

C.    **Evaluation of Claims of Mental Impairment**

The evaluation of a claim of disability based on mental illness requires use of a

psychiatric review technique ("PRT") that assesses impairment in four work-related broad

functional areas: (1) understanding, remembering or applying information; (2) interacting with

others; (3) concentration, persistence or maintaining pace; and (4) adapting or managing oneself.

20 C.F.R. § 416.920a(c)(3).  The ALJ uses a five-point rating scale: none, mild, moderate, marked, and extreme.  20 C.F.R. § 416.920a(c)(4).  If the impairment causes no or "mild" difficulties in these areas, the ALJ generally will find that it is not severe.  20 C.F.R. § 416.920a(d)(1).  On the other hand, if the diagnosed impairment causes marked limitations in at least two of the broad functional areas, or extreme limitations in at least one of the broad functional areas, the ALJ will find that the "paragraph B criteria" necessary to establish those Listings are equaled or met.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12:00(A)(2)(b) ("To satisfy the paragraph B criteria, your mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning.").

The PRT is used to rate the severity of mental impairments at Steps Two and Three of the sequential evaluation process and, if found to be severe, also serves as the backdrop for the more detailed mental RFC assessment at Step Four.  See, e.g., Wells v. Colvin, 727 F.3d 1061, 1069 (10th Cir. 2013); SSR 96-8p, 1996 WL 374184 (July 2, 1996).  The ALJ must incorporate pertinent findings and conclusions based on the PRT into his decision and must include a specific finding as to the degree of limitation in each of the four functional areas.  20 C.F.R. § 416.920a(e)(4); Carolyn Kubitschek & Jon Dubin, Social Security Disability Law & Procedure in Federal Court § 5:38 (2021 ed.).

### D.    Reliance on Experts

An ALJ cannot render a medical opinion in the face of conflicting and inconsistent medical evidence without the assistance of a medical expert.  Santiago v. Sec. of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) ("[A]n expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.").  If the medical evidence is such that a "reasonable mind might

accept [it] as adequate to support a conclusion" of disability, the ALJ cannot rest on his

untutored lay analysis to interpret it otherwise.  Sherry B. v. Saul, C.A. No. 20-140-JJM-PAS,

2021 WL 508517, at *2 (D.R.I. Feb. 11, 2021) (quoting Biestek v. Berryhill, 139 S. Ct. 1148,

1154 (2019)).

III.   **Analysis**

    Plaintiff's primary argument – that the ALJ erred in relying on the testifying medical

expert (Dr. Cohen) because her opinion "was not supported by substantial evidence" – suffers

from a familiar and fatal deficiency: it amounts to a request that the Court improperly reweigh

the evidence.  ECF No. 11 at 4; see Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL

92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022) ("Ultimately,

Plaintiff's challenge to the ALJ's evaluation of the record in this case inappropriately asks this

Court to reweigh the evidence in a manner more favorable to him.") (citing Seavey v. Barnhart,

276 F.3d 1, 10 (1st Cir. 2001)); Randy M. v. Berryhill, C.A. No. 18-00175-JJM, 2019 WL

1091389, at *6 (D.R.I. Mar. 8, 2019), adopted sub nom. Randy J.M. v. Berryhill, 2019 WL

2325997 (D.R.I. May 31, 2019) ("he fails to establish that the ALJ committed any reversible

error in evaluating such opinions and essentially asks this Court to reweigh the conflicting

medical opinions which is not this Court's role on review").  In arguing for reweighing of the

evidence, Plaintiff relies on his own six-point marshaling of such of the evidence of record that

he alleges is supportive of a finding of severity.[4]  This argument fails because it ignores the

---

[4] Because the ALJ's decision is well supported by substantial evidence, there is no need for the Court to parse the viability of Plaintiff's six-point argument.  Nevertheless, it must be noted that much of the evidence to which Plaintiff points does not support a finding of severity in the relevant period.  For example, Plaintiff argues that he had at least five psychiatric hospitalizations and, when experiencing mania, suffered from heightened symptoms; however, the evidence establishes that the last hospitalization and mania episode occurred over two years before the period in issue and that, once he achieved medication compliance well prior to the period in issue, he also achieved sustained stability with no mania.  Similarly, Plaintiff argues that he could not work because of poor judgment, problems with concentration, memory issues and irritability, yet his more than fifty MSEs prior to and during the period in issue consistently reflect adequate judgment, the ability to attend and concentrate, intact memory and

equally substantial evidence that Dr. Cohen (in her testimony) and the ALJ (in his decision) recite in support of their findings of no more than mild limitations in any of the four PRT functional areas and no more than minimal limitations in the ability to perform basic work activities.  Tr. 45-46 (Dr. Cohen testifies about Providence Center records, as well as clinical observations and MSE findings in them, to find that prior to and during period in issue, Plaintiff had no significant symptoms and no limitations in PRT functional areas); Tr. 14-16 (ALJ's analysis of evidence results in finding of no more than mild limitations in any functional area and no more than minimal limitations in the ability to do basic work activities).  This is more than enough to support the ALJ's finding that Plaintiff's bipolar disorder is not severe.  See Greene v. Astrue, Civil Action No. 11-30084-KPN, 2012 WL 1248977, at *3 (D. Mass. Apr. 12, 2012) (existence of some "evidence contrary to the ALJ's findings[] does not extinguish the substantial evidence supporting the ALJ's findings").

Plaintiff tries to overcome this flaw in his argument by asserting in passing (with no explication how or why) that the ALJ's supposedly substantial evidence is tainted because he engaged in improper "cherry picking" by citing only to the favorable portions of the medical record to support his decision.  While the Court should step past this argument as waived,[5] I pause to observe that neither Dr. Cohen nor the ALJ engaged in improper cherry picking.  To the contrary, both not only accurately summarized the MSEs of record, which are overwhelmingly

---

pleasant and cooperative attitude.  As a third example, Plaintiff contends that the ALJ ignored his testimony that his medications caused the serious side effects of lethargy and memory/cognitive problems.  This contention is squarely contradicted by MSEs of record, which consistently reflect intact memory, average intellectual functioning and (with two exceptions) normal energy levels; it is also directly contradicted by the consistent notations of the nurses (who dealt with Plaintiff's medication) that he reported no side effects.  E.g., Tr. 653 ("Medication: Side Effects: No"); Tr. 657 ("[s]elf reports no S/E from the medication").  Indeed, only twice in her many encounters with Plaintiff did Nurse Kerge note side effects; once she noted side effects but did not record what she observed and once she noted the side effect of "dry mouth."  Tr. 601, 728.

[5] "[T]hrow-in arguments left for the Court to sort out on its own . . . are deemed waived."  Melissa G. v. Kijakazi, C.A. No. 20-00367-WES, 2021 WL 3124228, at *8 (D.R.I. July 23, 2021).

normal, but also carefully highlighted that there were exceptions during the period in issue, as well as that during a prior period, Plaintiff had had a serious breakdown. E.g., Tr. 46 (Dr. Cohen noted that Plaintiff had breakdown due to not taking medications in 2017 and that, during period in issue, Plaintiff's mood was occasionally down and "recorded as anxious"); Tr. 13-14 (ALJ describes Plaintiff's 2017 psychiatric hospitalization and occasional anxious mood during relevant period). I find no improper cherry picking.

Plaintiff also attacks the ALJ's decision as lacking an adequate explanation of how he resolved the inconsistency between the findings of the non-examining psychologists and Dr. Cohen's opinions. To support this contention, he cites Kenyetta Day v. Berryhill, No. 1:16-cv-00593-JAW, 2017 WL 5037454, at *3 (D. Me. Nov. 2, 2017) ("[i]t is the ALJ's job to resolve evidentiary conflicts"). This challenge fails because its foundation is not correct. The ALJ's decision expressly sets out the analysis underpinning his finding that Dr. Cohen's opinion was persuasive and those of Drs. Hamel and Haggerty were not. In so doing, the ALJ focused particularly on Dr. Cohen's having reviewed the entire record, while Drs. Hamel and Haggerty did not; Dr. Cohen's having observed Plaintiff, while Drs. Hamel and Haggerty did not; Dr. Cohen's having provided detailed citations to support her findings, which Drs. Hamel and Haggerty did to a lesser extent; and the consistency of Dr. Cohen's findings with the record for the adjudicative period in contrast to the finding of Drs. Hamel and Haggerty, which were not so consistent.[6] Tr. 14-15. I find no error in the ALJ's approach to resolving the conflicts in the opinion evidence.

---

[6] Plaintiff does not address a different, and equally fatal, flaw with this argument. If sustained, this error would nevertheless be harmless because the ALJ's acceptance of the findings of the non-examining psychologists and rejection of the opinion of Dr. Cohen would not lead to remand. The non-examining psychologists both unambiguously found that Plaintiff could work, while the record does not contain a medical opinion that Plaintiff could not work. Only Nurse Kerge's notes come close in that they reflect that she encouraged Plaintiff to apply for SSI. However, she did not submit a medical opinion.

Finally, citing <u>McDonald</u>, 795 F.2d at 1124, Plaintiff alternatively contends that Dr. Cohen's opinion is tainted because she relied on an incorrect standard of proof, ostensibly ignoring that Step Two is a *de minimis* legal standard.  This argument is unavailing.  Dr. Cohen did not adopt and apply a legal standard.  Rather, she provided testimony based on her professional expert analysis of the medical <u>facts</u> of record, resulting in her opinions of no "significant symptomologies" and "no limitations" in any of the four PRT functional areas.  Tr. 45-46.  The Step Two legal conclusion – that Plaintiff's impairment was not severe – was made by the ALJ, based, *inter alia*, on 20 C.F.R. § 416.920a(d)(1) ("[i]f we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe"), which the ALJ accurately cites and correctly applies.  Further, beyond the statement in his brief that Dr. Cohen applied an incorrect standard of proof, Plaintiff points to no actual error of law; to the contrary, this asseveration of error is really just a different way to argue that the Court should reweigh what Plaintiff contends is "overwhelming evidence of a severe impairment,"[7] ECF No. 11 at 7, to reach a different conclusion.  As such, the Court should not sustain it.

At bottom, the substantial evidence in this case amply supports the ALJ's finding that plaintiff's bipolar disorder was not a severe impairment.  Plaintiff may disagree with the ALJ's weighing of the evidence but does not point to any error in the ALJ's analysis or show that the ALJ's decision is unsupported by substantial evidence.  Therefore, I recommend that the ALJ's determination that Plaintiff was not disabled during the relevant period should be sustained.

## IV.    <u>Conclusion</u>

---

[7] <u>But see</u> n.4, *supra*.

I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) be DENIED and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14) be GRANTED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 19, 2022